BARNES, EXECUTOR, ET AL. v. PHILLIPS ET AL.

[No. 22,703. Filed February 17, 1916.]

1. WILLS.—*Contest.*—*Natural Objects of Bounty.*—The law does not recognize nieces of testator as the natural objects of his bounty, although they are his nearest kin. p. 416.

2. WILLS.—*Execution.*—*Testamentary Capacity.*—*Codicil.*—The execution of a codicil by one having testamentary capacity is a republication and affirmance of the will and renders it valid, except as altered or revoked by the codicil, and notwithstanding he was of unsound mind when the will was executed. p. 416.

3. APPEAL.—*Review.*—*Instructions.*—*Weight of Evidence.*—*Preponderance of Evidence.*—An instruction stating that preponderance of the evidence means the greater weight of evidence, and does not depend upon the number of witnesses, but upon the greater weight to be given to all the evidence in the cause, is not erroneous. p. 417.

From Probate Court of Marion County (719); *Frank B. Ross*, Judge.

Action by Mary Phillips and others against Andrew J. Barnes, executor of the last will and testament of Thomas Nock, deceased, and others. From a judgment for plaintiffs, the defendants appeal. *Reversed.*

*John B. Elam, J. W. Fesler, Harvey J. Elam, Howard S. Young, Bernard Korbly* and *Willard New*, for appellants.

*John W. Holtzman, Lewis A. Coleman* and *Wm. Gage Hoag*, for appellees.

MORRIS, C. J.—Suit by appellees to contest, after probate, 'the will and a codicil thereto, of Thomas Nock, deceased, because of alleged unsoundness of mind, and undue influence. There was a trial by jury, which found both will and codicil invalid. Appellants rely, for reversal of judgment, on alleged errors in the giving and refusal to give to the jury of certain instructions. The testator was a native of England and, with his wife, came to Indianapolis in 1870, where they subsequently lived.

They had no children. Mrs. Nock died intestate in 1906, and testator died in 1911. When Mrs. Nock died her nearest of kin were nephews and nieces, living in America. Mr. Nock's nearest of kin at his death were nieces living in England. When the Nocks came to Indianapolis they first lived with the family of Edward T. Sinker, then a prosperous business man. Mrs. Nock was a sister of Mrs. Sinker. The Nocks by close frugality acquired a considerable estate. In 1886, because of business reverses, the Sinker homestead on Vermont Street had to be sold. Mr. Nock purchased it and had it conveyed to Mrs. Nock, who died the owner thereof. Its value increased greatly before Mr. Nock's death.

By the will, executed in 1907, Mr. Nock devised the Sinker homestead, which he inherited from his wife, to the children of Mrs. Nock's deceased sister, who was the wife of Edward T. Sinker. This devise was in accord with the purpose of Mr. and Mrs. Nock, who, when it was purchased from the Sinkers, expressed the intention of giving it, finally, to the Sinker children. The will gives about half, in value, of testator's property to his wife's kindred and the remainder to his own. In instruction No. 12 the court informed the jury that "the law would recognize his said nieces as the natural objects of his bounty." This was error. *Breadheft* v. *Cleveland* (1915), *ante* 130, 108 N. E. 5, 110 N. E. 662.

The codicil was executed in July, 1911, about four years after the execution of the will. The bulk of appellees' evidence on the question of testamentary capacity related to the time of executing the original will. Under the evidence here the jury might have found the testator of sound mind when the codicil was signed, but of

unsound mind when the will was executed. In such case the will would be valid, except as altered or revoked by the codicil since the effect of the latter is a republication and affirmance of the former. *Manship* v. *Stewart* (1914), 181 Ind. 299, 104 N. E. 505. The codicil here merely revokes the will's appointment of one Kingston as executor and trustee and appoints another in his place. It is contended by appellants that, while they were entitled to a verdict on the issue of testamentary capacity unless the testator was of unsound mind when each instrument was executed, the court, by instruction No. 16 informed the jury, in effect, that if it found testator of unsound mind when the will was executed it should be held invalid, regardless of his sanity when the codicil was executed. While there is some doubt about the proper construction of this instruction we are inclined to adopt that urged by appellants. So construed it was erroneous. *Manship* v. *Stewart, supra.*

· Instruction No. 6 given to the jury reads as follows: "By preponderance of the evidence is meant the greater weight of evidence, and does not 3. depend upon the number of witnesses; but does depend upon the greater weight to be given to all the evidence in the cause." This instruction is vigorously assailed by appellants' counsel, but we hold it not erroneous. *Vivian Collieries Co.* v. *Cahall* (1916), *post* 473, 110 N. E. 672. Complaint is made of a number of instructions relating to undue influence, because, as claimed, there was no evidence of such influence. We are of the opinion that there was sufficient evidence on such issue to warrant its submission to the jury. Some other questions are presented, but they are not likely to arise on another hearing. For the er-

rors contained in instructions Nos. 12 and 16 the judgment is reversed with instructions to grant a new trial.

NOTE.—Reported in 111 N. E. 419. As to testamentary capacity, see 117 Am. St. 582. On how far a will is modified by a codicil see 1 L. R. A. (N. S.) 397. For a discussion of preponderance of evidence as determined by mere number of witnesses, see Ann. Cas. 1913 D 676. See, also, under (2) 40 Cyc 1217; (3) 38 Cyc 1750.