STATE of Iowa, Appellee,

v.

Ralph Laverne DOUGHTY, Appellant.

No. 85–546.

Supreme Court of Iowa.

Dec. 17, 1986.

Rehearing Denied Jan. 14, 1987.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., and William E. Davis, Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, SCHULTZ, LAVORATO, and NEUMAN, JJ.

REYNOLDSON, Chief Justice.

An instructional error required us to reverse a prior judgment convicting defendant of first-degree kidnapping, a crime involving sexual abuse of a five-year-old boy. *State v. Doughty,* 359 N.W.2d 439 (Iowa 1984). Doughty now appeals his second conviction for the same offense following retrial, claiming an irregularity in the jury composition. We affirm in part, reverse in part, and remand with directions.

The controlling facts are undisputed. Doughty's second trial commenced February 25, 1985. Jury selection took most of the day and resulted in a jury of seven men and five women. Two men were selected as alternates. The clerk then called the roll of the fourteen persons to be sworn. One of those called was Barbara Dichiser. For some unexplained reason Dichiser did not respond to the call. Instead, Richard Frahm, whom defendant had peremptorily struck, took a place in the jury box, making a jury of eight men and four women. Without objection from defendant, the jurors and alternates were sworn.

Closing arguments were made February 28, 1985, and the case was submitted to the jury at 11:10 a.m. The record does not disclose whether or not a lunch period was taken. However, it does show the jury returned a signed verdict at 1:42 p.m. on the same day, finding defendant guilty of kidnapping in the first degree. When the jury was polled, it was discovered Frahm rather than Dichiser had served on the jury.

After the jury again was sequestered, defense counsel moved for a mistrial. In response, the prosecutor argued defendant waived any error when he failed to raise an objection before or at the time the jury was sworn.

Trial court denied defendant's motion for mistrial, but not on the basis of waiver. Rather, trial court refused to accept the jury's original verdict and, after examining the first alternate juror to determine whether he could still serve as an appropriate juror, replaced Frahm with the alternate and instructed the jury to begin its

deliberations anew. After deliberating an hour, the reconstituted jury again returned a guilty verdict. Trial court entered judgment sentencing defendant to life imprisonment and he has appealed.

I. Defendant mounts a two-pronged attack on his conviction. He asserts a verdict joined in by a juror whom he had peremptorily struck was so inherently prejudicial trial court should have granted his mistrial motion. Defendant next contends that in any event trial court erred in placing an alternate on the jury "after the jury had retired to deliberate and had returned a verdict."

The State responds that defendant's failure to take even minimal steps to insure that persons whom he struck from the jury panel were properly removed should result in a waiver of his right to object to the jury's composition after an adverse verdict. The State further contends the court's resubmission of the case was not error, but nonetheless any error in this regard was harmless beyond a reasonable doubt.

We need not consider defendant's second ground for reversal or the State's response because we find defendant is precluded from asserting any error with respect to the first verdict. Further, we hold trial court should have received it.

II. The record discloses a computer-printed jury panel list was used for the second trial. It contained pertinent information for use of the parties and counsel. Barbara Lillian Dichiser, age forty-six, was shown to be a "housewife," and her spouse a sales manager. Richard Frahm, age seventy-seven, was shown to be a farmer, and his spouse a "housewife." The sheet prepared for the parties to exercise their peremptory strikes reveals the name of Barbara Dichiser to be handwritten, following the printed but stricken name of another juror who was excused, and extending into the space reserved for the parties to exercise their strikes. The record is clear that Dichiser's name was included among the jurors selected and was called to be sworn by the clerk, who "stumbled" over the pronunciation.

Nonetheless, although confronted by a jury with four rather than five women, neither defense counsel nor the defendant, who was present and raised several complaints and objections during trial, challenged the jury as constituted, or any of its members. Although trial court later observed that none of the parties was conscious of the juror substitution, defense counsel during in-chamber discussions conceded he had the responsibility to "watch out for" the persons he struck. His position was that because he did not know a juror he struck was in the jury box and being sworn, he could not have waived any error in that regard.

During the two days after the jury was sworn, while opening statements were given, evidence submitted, and closing arguments made, defense counsel and defendant had a continuous opportunity to observe the jury and call any potential irregularity to the court's attention. Had any objection to Frahm been lodged before submission of the case to the jury, one of the alternate jurors could have been substituted. Iowa R.Crim.P. 17(15) ("Alternate jurors shall … replace any juror who … is disqualified … before the jury retires….").

In this jurisdiction "known objections, *or those which may be ascertained,* are waived if no challenge is made before the jury is sworn." *State v. Cuevas,* 288 N.W.2d 525, 534 (Iowa 1980) (quoting *State v. Grove,* 171 N.W.2d 519, 520 (Iowa 1969) (emphasis added)); *see also Turner v. Jones,* 215 N.W.2d 289, 291 (Iowa 1974). In *Grove,* five members of a prior jury in a criminal case against the defendant, in which the charge arose out of the same events, were left on the jury in the trial of the related offense. Although the same counsel defended in both trials, he made no challenge to any of these jurors until his motion for new trial. Upon appeal following denial of his motion, we articulated the above-quoted waiver rule, and further noted:

Defendant now asks us to redeem him from his failure to exercise a known

right at a time when relief, if proper, would have been available to him. We cannot do so; nor under these circumstances should we.

171 N.W.2d at 520.

In the case before us, defendant knew he had a right to object to the presence on the jury of a person he had peremptorily struck. This relief was available to him until the case was submitted to the jury. We are not justified in retrieving his lost opportunity at this point, especially where he has made no attempt to show actual prejudice resulted from Frahm's jury participation.

Nor do we intend to dissect these events to determine whether defendant's failure to make a timely jury challenge neatly squares with our law of waiver, or of estoppel, in civil litigation. It is sufficient to note this situation falls within that category of cases in which this court, applying statute, rule, or case law, has held an accused has attempted to assert his or her rights too late. *See, e.g., State v. Sheets,* 291 N.W.2d 35, 36–37 (Iowa 1980) (Defendant waived objection to county attorney's qualification to sign information by first raising this ground in motion for new trial.); *State v. Winquist,* 247 N.W.2d 256, 259 (Iowa 1976) (Qualification of person withdrawing blood for testing could not first be challenged on motion for new trial; objection ordinarily must first be made at the earliest opportunity after its ground became apparent.); *State v. Jewett,* 219 N.W.2d 559, 560 (Iowa 1974) (Defendant raised issue "too late" when first asserting on new trial motion that court should have held an in camera hearing before overruling defendant's motion to strike an in-court identification.); *State v. Binkley,* 201 N.W.2d 917, 919 (Iowa 1972) (Objection that person withdrawing blood for testing was not designated by licensed physician, first raised when instructions were submitted, was "not timely."); *State v. Twine,* 211 Iowa 450, 456, 233 N.W. 476, 479 (1930) (Defendant waived objection to grand jury when raising objection just prior to second trial.); *State v. Schumacher,* 162 Iowa 231,

237, 143 N.W. 1110, 1113 (1913) ("If such amendment [to the indictment] was not read to the jury the irregularity in this respect was waived by the defendant in proceeding with the trial."); *State v. Browning,* 153 Iowa 37, 42, 133 N.W. 330, 333 (1911) ("It is the universal rule that objection to the form of [the witness's] oath must be made previous to its administration, or it will be deemed waived."); *State v. Icenbice,* 126 Iowa 16, 19–20, 101 N.W. 273, 274 (1904) (Defendant could not complain when he did not protest the court's action in swearing the jury before he had exhausted his peremptory challenges.).

Other decisions bear more directly on the issues raised by this defendant. In *State v. Pickett,* 103 Iowa 714, 73 N.W. 346 (1897), defendant's motion for new trial alleged he did not know until after trial that one of the jurors could not read or write the English language, a statutory qualification for jury service. This court, overruling a prior decision holding it was the State's duty to put none but competent jurors in the box, stated:

There is no reason why every party to an action, civil or criminal, should not be held to exercise the right given him to examine as to the qualifications of jurors called to act in his case, and, if he waives that right, to be concluded thereby, unless actual prejudice is otherwise shown.

*Id.* at 720, 73 N.W. at 347. Here defendant easily could have determined there was an irregularity in the composition of the jury by merely noting the number of women members. It is equally clear any challenge in this regard would have been sustained. We think the *Pickett* reasoning applies. We hold defendant is precluded from lodging any objection to the jury that returned the first guilty verdict.

Two jurisdictions confronted with similar situations have reached the same result. In *Vaccaro v. Caple,* 33 Md.App. 413, 365 A.2d 47 (1976), three jurors who had been peremptorily struck were inadvertently sworn. Appellant's counsel claimed he did not discover the error until the day after

the verdict was rendered. Affirming the denial of the motion for new trial, the *Vaccaro* court observed:

> The rule is, we are convinced, that when a juror who might otherwise be disqualified for cause is permitted to serve on a jury because of the failure of the aggrieved party to use due diligence in discovering the irregularity, a judgment of that jury will not be disturbed. It seems to us even less justifiable—in such an instance—where the challenge is a peremptory one, which could have been exercised for any arbitrary reason or for no reason at all.

*Id.* at 417, 365 A.2d at 50.

*Acosta v. State*, 522 S.W.2d 528 (Tex. Crim.App.1975), presented the same factual situation as the instant case. The court there approvingly quoted the following from a prior decision:

> It is the duty of the parties to see that, as impaneled, the box does not contain a juror who has been challenged by striking; should such a juror remain and be sworn, the court is not obliged to discharge him and substitute another juror. A fortiori, the verdict is not vitiated thereby—at least unless the complainant can affirmatively show that the unaccepted juror was prejudiced.

522 S.W.2d at 529 (quoting *Anderson v. State*, 142 Tex.Crim. 384, 386–87, 154 S.W.2d 482, 483 (1941)).

We find nothing burdensome in imposing upon the respective parties an obligation to see that prospective jurors they have peremptorily struck do not take the oath and serve as jurors, nor do we find it fundamentally unfair to hold a party who waits until after the verdict to object is precluded from then challenging the irregularity, at least in absence of affirmative proof of prejudice.

III. Holding as we do that defendant was untimely in his challenge to the composition of the jury that returned the first guilty verdict, we affirm trial court's denial of defendant's motion for mistrial, even though that ruling was based on different grounds. We hold the first verdict was final even though juror Frahm was not polled as were the other jurors. Defendant waived Frahm's response when he made a prompt motion for mistrial and did not pursue his request that the jury be polled. *See State v. McConnell*, 178 N.W.2d 386, 390–91 (Iowa 1970). Arriving at this conclusion, we reverse the judgment appealed from, it being based on the verdict returned by the reconstituted jury. We remand this case with directions to enter judgment on the verdict first returned. Costs are taxed to the defendant.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.